FILED
2021 Sep-10  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LAMAR GIBSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 2:19-cv-08005-LSC |
| | ) | (2:08-cr-00309-LSC-TMP-2) |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OF OPINION**

This Court has for consideration Petitioner Lamar Gibson's ("Gibson's") motion to vacate, set aside, or correct his sentence filed pursuant to 28 U.S.C. § 2255. (Doc 1.) The United States has responded in opposition to the motion. (Doc 8.) For the reasons set forth below, the § 2255 motion is due to be denied and this action dismissed without an evidentiary hearing.

## I.    Background

### A. Trial and Sentencing

On July 29, 2008, an indictment was filed against Gibson for conspiracy to possess with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Count 1); distribution of 50 grams or

more of cocaine base in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(A) (Count 2); attempt to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§846, 841(a)(1) and (b)(1)(A) (Count 3). (Cr. Doc. 1.)[1] Gibson was represented by Attorney L. Dale Jones.

Gibson's trial began on October 9, 2012, and concluded on October 11, 2012. The Government's evidence at trial centered on a sting operation conducted by the DEA. In hopes of obtaining a more lenient sentence in a separate case, Jesse Henderson cooperated with law enforcement in the operation focused on Gibson and one of his associates, Sean Greer. At trial, the Government introduced audio recordings of two phone conversations between Henderson and Greer, in which a deal with Gibson was discussed. The Government also played a recording produced by a body wire that Henderson wore during a drug transaction involving Gibson, Greer, and Henderson. Another recording of a phone call between Henderson and Gibson arranging for Henderson to purchase cocaine and heroin from Gibson came in as part of the Government's case, as well as testimony by Henderson, Greer, and Sergeant Walls of the DEA. The jury returned a guilty verdict on all three counts (Cr. Doc. 72), and on March 14, 2013, Gibson was sentenced to 360 months

---

[1] "Cr. Doc." refers to an entry on the docket sheet in the underlying criminal case, No. 2:08-cr-00309-LSC-GMB.

imprisonment as to all three counts, to be served concurrently (Cr. Doc. 79). Gibson's sentence would also run concurrently with his sentence in Jefferson County Circuit Court case no. CC93-2547. (*Id.*)

### B. Appeal

Gibson filed a timely appeal on March 18, 2013. (Cr. Doc. 76.) Gibson argued on appeal that he was improperly excluded from jury voir dire, that he was prejudiced by several erroneous evidentiary rulings, that the evidence introduced against him was not sufficient to support his conviction for attempted distribution of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), and that the prosecution improperly shifted the burden of proof to Gibson during closing arguments.

On January 31, 2017, the Eleventh Circuit Court of Appeals affirmed this Court's judgment of conviction against Gibson. (Cr. Doc. 127.) The court found nothing in the record to indicate that Gibson was not present during jury voir dire and refused to find error without evidence in the record. The Eleventh Circuit also concluded that this Court did not commit plain error by admitting the audio recordings of the phone conversations and the in-person meeting under Federal Rule of Evidence 404(b). Furthermore, the Eleventh Circuit found that this Court did not abuse its discretion by allowing the prosecution to present evidence that Gibson had

previously discussed selling heroin to Henderson and provided a sample to Henderson as evidence of his present intent to distribute narcotics, including crack cocaine. The court also concluded the evidence was sufficient to support a substantial step, rather than mere remote preparation, as the basis for his attempt conviction. Finally, applying the plain error standard, the appellate court found that even if the prosecution improperly shifted the burden of proof onto Gibson during closing arguments, Gibson failed to demonstrate that it had any effect on his substantial rights, so that argument also failed. The court also determined that it lacked jurisdiction to address his motion for a new trial.

Gibson petitioned the United States Supreme Court for a writ of certiorari, and such petition was denied on January 8, 2018. (Cr. Doc. 129.)

### C. § 2255 Proceedings

On January 7, 2019, Gibson signed his § 2255 motion, which was filed into the record on January 22, 2019.[2] (Doc. 1.) Gibson enumerates seven grounds on which he contends that he is due relief, including two grounds that his counsel was ineffective for failing to raise objections before the district court. Liberally construing

---

[2]     The Eleventh Circuit applies the "mailbox rule" to deem a prisoner's § 2255 motion to have been filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

the substance of his claims,[3] Gibson seeks relief in his initial § 2255 motion on the

following seven bases:

1. Trial counsel failed to object to the closure of the courtroom, denying Gibson a public trial in violation of the Sixth Amendment.

2. Gibson was denied effective legal assistance during peremptory strikes because he and his counsel were absent from the courtroom when strikes were conducted.

3. Suppression of fingerprint evidence by the prosecutor, which was not disclosed to the defense, amounted to prosecutorial misconduct.

4. Significant and substantial omissions throughout the record violated the Court Reporter Act, 28 U.S.C. § 753(b), and the opening and closing arguments were not signed or filed electronically.

5. Gibson should be resentenced under 18 U.S.C. § 3559(7) due to a current challenge on constitutional and jurisdictional grounds of his state robbery conviction in the Jefferson County Circuit Court.

6. Gibson should be resentenced based on a change in the statutory maximum penalty and First Step Act retroactivity.

7. Sergeant Walls committed fraud on the court by manipulating, altering, and deleting portions of the audio recordings used at trial against the defendant.

(Doc. 1).

---

[3] This Court liberally construes Gibson's pleadings as he is a *pro se* litigant. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

## II.     Timeliness and Non-Successiveness of the § 2255 Motion

The Supreme Court denied Gibson's petition for writ of certiorari on January 8, 2018. (Cr. Doc. 129.) Gibson filed the instant § 2255 motion on January 7, 2019, within one year after the date in which his conviction became final, making his filing timely. *See* 28 U.S.C. § 2255(f)(1).

Gibson is bringing his first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See id.* at §§ 2255(h), 2244(b)(3)(A).

## III.     Standard of Review

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the [movant's] allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, it is appropriate for the court to conduct an evidentiary hearing if, "accept[ing] all of the [movant's] alleged facts as true," the movant has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

## IV.   Discussion

### A. Procedural Default of Claims 3, 4, 5, and 7

As an initial matter, grounds three, four, five, and seven of Gibson's motion are all procedurally barred because they were available to him on direct appeal and were not pursued. Having failed to raise these claims on direct appeal, Gibson faces a heightened threshold for having them considered in this § 2255 proceeding:

> [A]n available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development. When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error.

*Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam) (citations and explanatory parentheticals omitted). To establish prejudice under this standard, the § 2255 movant "shoulder[s] the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). For the claims set forth, Gibson did not demonstrate cause for his failure to raise those claims on direct appeal or prejudice from the errors he alleges.

Alternatively, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default [of the asserted constitutional violation]." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In this context, "'[a]ctual innocence' means factual innocence, not mere legal innocence [sic]." *Lynn v. United States*, 365 F.3d 1225, 1235 n.18 (11th Cir. 2004) (per curiam) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). "To establish actual innocence, [Gibson] must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). As discussed further herein, Gibson cannot demonstrate that he is actually innocent of the charges of which he stands convicted, as the evidence against him at trial was firm. As such, he cannot avoid the procedural bar through the miscarriage-of-justice exception.

## B. Ineffective Trial Counsel

Gibson claims his trial counsel was ineffective for not objecting to a "structure error." He contends that, by failing to object to the closure of the courtroom and defense counsel's absence from peremptory strikes, Mr. Jones rendered constitutionally deficient counsel. Claims of ineffective counsel may be raised for the

first time in a § 2255 motion and therefore are not procedurally barred due to the movant failing to raise such claims on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To the extent that Gibson complains of the effectiveness of his trial counsel in grounds one and two, he must demonstrate that his trial representation failed to meet the *Strickland* standard:

> Under *Strickland v. Washington*, trial counsel is ineffective when:
> First, … the counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, … the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Price v. Allen*, 679 F.3d 1315, 1322-23 (11th Cir. 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). For ineffective counsel to cause prejudice ordinarily the court must apply the reasonable probability test that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017). When a defendant raises a public trial violation through an ineffective trial counsel claim, the *Strickland* standard is not automatically satisfied. *Id.* The burden is on the defendant to show a reasonable probability of a different outcome in trial or that the particular violation was serious enough to render the result of the trial fundamentally unfair. *Id.*

As explained in further detail below, Gibson's trial counsel could not have been ineffective for failing to object to the closing of the courtroom or the defense's absence during peremptory strikes because the claims are all meritless, having no basis in fact, as represented by the trial record. It was thus reasonable for Gibson's trial counsel not to present the issues Gibson now raises, and Gibson cannot demonstrate that the outcome of his trial was adversely affected as a result of that failure.

### C. Substantive Claims

#### 1.    Failure of trial counsel to object to courtroom closure

In ground one, Gibson argues that his trial counsel's failure to object to the closure of the trial courtroom rendered the trial fundamentally unfair. "[O]pen trials ensure respect for the justice system and allow the press and the public to judge the proceedings that occur in our Nation's courts." *Id.* at 1913. For a movant to successfully prevail on a structural error such as a courtroom closure, one could show that his trial was held in a remote place or in secrecy or that the judge, prosecutor, or any other party misbehaved by failing to approach their job with "the neutrality and serious purpose that our system demands." *Id.*

As the Government notes in its brief, Gibson's assertion on this ground is confusing. (Doc. 8 at 9-10.) Gibson alleges that the courtroom was closed prior to

jury instructions, which occurred on October 11, but he also states that the court was closed for the entire first day of the trial, which occurred on October 9. (Doc. 1 at 6.) The factual record disputes Gibson's claim of a structural error due to the courtroom door being closed. The record indicates that this court called for trial and no dialogue pertaining to the closing of the courtroom ensued. (Cr. Doc 122 at 2.)

> THE COURT: We are calling for trial this morning the case of *United States of America v. Lamar Gibson*, Case number 2008-309.
>
> Is the Government ready to proceed?
>
> MR. WEIL [Assistant U.S. Attorney]: We are, your Honor.
>
> MR. JONES [Defense Counsel]: Yes, sir.

(*Id.*) Neither in the initial call to order nor in the following record of events is there any indication that the courtroom was closed to the public. In fact, the record indicates that the proceedings were conducted "in open court" throughout the course of the trial. (*Id.* at 54, 56; Doc. 89 at 2, 30, 36, 68, 86, 89, 102; Doc. 90 at 2, 94, 107, 108, 117, 155; Doc. 120 at 2, 4; Doc. 122 at 54, 56; Doc. 123 at 2, 24).

Before issuing the jury instructions on October 11, however, the court addressed those present before a brief recess:

> THE COURT: We are outside the presence of the jury. I will give them the instructions here in just a minute. If y'all need to set up or do

anything different, otherwise you can just sit down and we'll start back.

Nobody will be allowed to leave the courtroom or come back in during

the instructions.

So if you want to leave during the instructions, you need to leave need

to get a restroom break or something, do it now. When I start, you won't

get back in.

(Doc. 120 at 41-42.) In issuing this instruction, this Court was not closing the trial to

the public but merely ensuring that no interruptions would distract the jury from

hearing and following the instructions. Furthermore, when the recess ended and the

instructions were given, the record indicates that the proceedings were conducted

"in open court." (Doc. 123 at 2.)

If Gibson is instead alleging that the court was closed prior to jury selection,

for the first day of trial, the record still refutes his claim, as discussed in more detail

below. These facts are further supported by an affidavit from Gibson's trial counsel,

clarifying that "From my recollection, the Court was never closed from the public;

and specifically, nothing out of the ordinary course of a normal jury trial took place."

(Doc. 8-1 at 1.)

Even if the courtroom door was closed, the closure of the door did not in any

way prevent Gibson from receiving a proper, neutral trial that would have amounted

to a different ruling had the door been open. Supported by the evidence and reasoning above, this ground is meritless.

### 2.    Absence of defendant and defense counsel during peremptory strikes

Ground two asserts that neither Gibson nor his defense counsel were present at voir dire during peremptory strikes resulting in ineffective counsel. When considering the transcript of the voir dire process in this case, the movant's factual allegation does not match the record of events. The record indicates the case was called to trial, and both parties were present and answered affirmatively when asked if they were ready to proceed. (Cr. Doc. 122 at 2.)

> THE COURT: We are calling for trial this morning the case of *United States of America v. Lamar Gibson*, Case number 2008-309.
>
> Is the Government ready to proceed?
>
> MR. WEIL: We are, your Honor.
>
> MR. JONES: Yes, sir.

(*Id.*) Next, both the defense and the government questioned the potential jurors, indicating the defense's presence and adequate participation in the voir dire process. (*Id.* at 44.)

> THE COURT: Defense.

> MR. JONES: Good morning. Again, my name is Dale Jones. I represent Mr. Lamar Gibson. I want to know as much about you folks as I can because the more information I get determines, lets me know if you have any biases.

(*Id.*) Proceeding on, the Court discussed the number of allowable strikes with both the Government and the defense, inquired about any challenges to jurors each party may have, and limited each side to fifteen minutes to make such strikes. (*Id.* at 53-54.) The Court was dismissed for fifteen minutes for each party to make their strikes, and then the Court reconvened to notify the potential jurors of the twelve selected. (Cr. Doc. 122 at 54.)

> THE COURT: All right. Any challenges for cause from the government?
>
> MR. WEIL: None.
>
> THE COURT: Any challenges for cause for the defendant?
>
> MR. JONES: No, sir.
>
> THE COURT: How many strikes do they get? You get ten, you only get six.

 (*Id.* at 53.) The defense counsel himself conducted strikes and was fully present for the announcement of the selected jurors. (*Id.* at 57.)

THE COURT: What says the government? Is this your jury?

MR. WEIL: It is, your honor.

THE COURT: What says the defense? Is this your jury?

MR. JONES: Yes, sir.

(*Id.*) Ground two's claim that the defendant and defense counsel were not present during the preemptory strikes is of no merit as it is contradicted by the record, and thus Gibson's trial counsel was not ineffective for failing to raise this issue.

### 3. Prosecutorial misconduct for failure to disclose co-defendant's fingerprint evidence

In ground three, Gibson argues that the prosecutor did not disclose to the defense that the fingerprints of his co-defendant, Sean Greer, were found on bags containing the drugs, which was based on Greer's motion to suppress fingerprint evidence filed prior to his sentencing hearing. This allegation is barred because Gibson did not raise it on direct appeal and has not established good cause for why he failed to do so. *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994). Nor can he show prejudice. First, the Court notes the stipulation entered into at trial and signed by both parties, acknowledging that "[n]o latent fingerprints were developed on exhibit one." (Cr. Doc. 90 at 221.) This stipulation is consistent with Mr. Walls's testimony. (*See* Cr. Doc. 89 at 25-29.) Furthermore, Greer's motion to suppress was related to fingerprint samples the Government intended to use to establish prior state

convictions at sentencing, rather than fingerprint evidence from the instant offense (Cr. Doc. 31), so any alleged suppression of that evidence in no way prejudiced Gibson. Finally, Gibson was charged with conspiracy, and the jury heard evidence concerning the hand-to-hand transaction involving Greer, so even if Greer's prints had been recovered, Gibson would not be prejudiced by any alleged suppression of such evidence. (*See* Cr. Doc. 89 at 25-29, Cr. Doc. 90 at 219-23.)

Even if the claim was not barred, Gibson's claim lacks merit. In an affidavit submitted with the Government's response in opposition to Gibson's § 2255 motion, Gibson's trial counsel explains that he had "absolutely no problems with obtaining discovery or any other information that [he] requested from the assigned United States Assistant Attorney." (*See* Doc. 8-1 at 1). Gibson has failed to show that the prosecutor engaged in misconduct for failure to disclose exculpatory evidence, and therefore, his argument fails.

### 4.   Violation of the Court Reporter Act, 28 U.S.C.  753, due to omissions in the record

In ground four, Gibson asserts a violation of the Court Reporter Act, 28 U.S.C. § 753(b), due to "omissions throughout the record" and failure to file the opening statements and closing arguments electronically. This claim was available to Gibson on appeal, but he failed to raise it before the court. He asserts that this failure was due to an incomplete record, but such incompleteness of the record is the very

basis for his argument, not a cause for his failure to present it on appeal. Gibson has not demonstrated cause or prejudice, so he is procedurally barred from raising this argument now.

Even if Gibson were not barred from proceeding with this argument, he has failed to offer more than a bare allegation that the record was so lacking as to require a new trial. When a new attorney is representing the defendant on appeal, there must be a substantial and significant omission from the transcript for a new trial to be necessary. *United States v. Charles,* 313 F.3d 1278, 1283 (11th Cir. 2002). In determining whether the omission is "substantial and significant," the court must make a determination only after attempting to reconstruct any portions missing from the trial transcript. *United States v. Precaido-Cordobas*, 981 F.2d 1206, 1212 (11th Cir. 1993). The Eleventh Circuit has previously held that there can be no substantial omissions from the record if, taken as a whole, the record allows for effective appellate review. *United States v. Cashwell*, 950 F.2d 699, 704 (11th Cir. 1992). Furthermore, "[t]he transcript in any case certified by the reporter . . . shall be deemed prima facie a correct statement of the testimony taken and the proceedings had." 28 U.S.C § 753(b).  The court reporter's transcripts from the trial and sentencing were filed October 25 and August 29, 2013, respectively, and each was certified by the reporter. (*See* Cr. Doc. 88, 89, 90.)  Thus, Gibson's unsupported

allegations that the transcripts contained omissions do not override the prima facie evidence of the certified transcripts.  The defendant fails to enumerate or point to any specific information that is missing from the record that is substantial or significant, making this claim meritless.

### 5.      Resentencing based on challenge to prior conviction

Ground five's claim that resentencing is due under 18 U.S.C. § 3559(c)(7) based on an appeal of a prior conviction is also procedurally barred because Gibson failed to raise it in his direct appeal and has not shown cause and prejudice to overcome that failure. The claim also lacks merit. Pursuant to 18 U.S.C. § 3559(c)(7), an individual can be resentenced if their prior conviction is overturned on constitutional grounds or is vitiated on the basis of innocence or if the defendant is pardoned on the explicit basis of innocence. Mr. Gibson's previous conviction in the Jefferson County Circuit Court, case no. CC93-2547, has yet to be overturned on constitutional grounds. Resentencing based on the possibility of a prior sentence being overturned is not supported by the language of the statute and, therefore, cannot serve as a basis for resentencing.

### 6.      Resentencing based on changes to maximum penalties for career offenders and First Step Act retroactivity

Gibson asserts that under the First Step Act, the maximum possible sentence was reduced from life to twenty-five years. He further claims that because he was

sentenced as a career offender under the thirty-year guideline range, his statutory maximum under the First Step Act is less than the statutory minimum that would apply should he be resentenced.

Since submitting his initial motion, Gibson has requested leave of the court to dismiss this ground from his § 2255 motion without prejudice. (Doc. 10.) Even if the Court granted this motion, Petitioner would not receive any benefit. Section 2255(e) prohibits a court from entertaining "[a]n application for a writ of habeas corpus in behalf of a prisoner … if it appears that … such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." Furthermore, any subsequent motion pursuant to § 2255 would be barred as second or successive, absent a showing of newly discovered evidence or a new rule of constitutional law. 28 U.S.C. § 2255(h). Regarding the interplay between these two provisions, the Eleventh Circuit has previously stated, "The existence of the statutory bar on second and successive motions cannot mean that § 2255 is 'inadequate or ineffective' to test the legality of [Petitioner's] detention. If it did, the savings clause would eviscerate the second or successive motions bar…." *Gilbert v. United States*, 640 F.3d 1293, 1308 (11th Cir. 2011). Gibson would thus be barred from raising this claim in a subsequent petition, so his request to dismiss the claim without prejudice is denied.

Turning to the merits of the claim, the ability of a court to modify a sentence pursuant to the First Step Act is permissible by 18 U.S.C. § 3582(c)(1)(B), which provides that a court "may not modify a term of imprisonment once it has been imposed except that ... the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute…." The Fair Sentencing Act increased the amount of cocaine base to trigger the 20-year minimum from 50 grams to 280 grams in 21 U.S.C. § 841(b)(1)(A)(iii). Due to this statutory change, the defendant was sentenced to penalties pursuant to § 841(b)(1)(B)(iii) because Gibson's chargeable amount was 123.8 grams. Nothing in the First Step Act reduced the statutory maximum penalty under 21 U.S.C. § 841(b)(1)(B), and no changes to the Federal Sentencing Guidelines have affected the sentencing range applicable to Gibson as a career offender.

The only change that the First Step Act introduced to 21 U.S.C. § 841(b)(1)(B) was to the language outlining prior convictions that would increase the statutory minimum. Before the change, "a prior conviction for a felony drug offense" led to the increase, but after the First Step Act, only "a prior conviction for a serious drug felony or serious violent felony" produced that result. Section 404(b) of the First Step Act did, however, allow courts to reduce a sentence that was imposed prior to the passage of the Fair Sentencing Act, declaring that "[a] court

that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Pub. L. No. 115-391 (internal citations omitted). But for sentences that were imposed under the Fair Sentencing Act, the First Step Act § 404(c) imposed a limitation: "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed . . . in accordance with the amendments made by section 2 and 3 of the Fair Sentencing Act of 2010."

Gibson was sentenced under 21 U.S.C. § 841(b)(1)(B) on March 14, 2013, so he already received the benefit of the changes created by the Fair Sentencing Act of 2010 in his sentencing. Further, it is consistent with the intent of the First Step Act to give the sentencing court discretion, as § 404(c) of the First Step Act further declares that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." This Court is not legally obligated to resentence Gibson pursuant to the First Step Act, and since Gibson has already received the benefits of the change in law, this Court will deny this ground for re-sentencing.

**7.     Manipulation of evidence constituted fraud on the court**

Gibson's final argument alleges that a member of law enforcement altered two audio recordings that were played during the trial, resulting in a fraud on the court. This argument is also procedurally barred because Gibson did not raise it on direct appeal and has not demonstrated the cause and prejudice necessary for him to be able to raise it now. But even if Gibson overcame the procedural bar, his argument would fail on the merits. The movant must prove fraud on the court by clear and convincing evidence, limiting such fraud to its most egregious forms. *Gupta v. U.S. Att'y Gen.*, 556 Fed. App'x. 838, 840 (11th Cir. 2014) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)). While manipulation of material evidence might satisfy that standard, Gibson offers no evidence that such manipulation ever took place. He alleges that the agent, Chris Walls, testified that he "clipped pieces of conversations out." (Doc. 1 at 10.) Walls testified that two recordings of telephone conversations that were admitted into evidence as Government's Exhibits 4 and 5 were taken from the original recording and that there were no material alternations:

MR. WEIL: Were these recordings taken off, Exhibits Four and Five taken off the original recording that you did?

MR. WALLS: They were.

MR. WEIL: And you listened to them just this afternoon, right, these actual copies?

MR. WALLS: Yes.

MR. WEIL: Were there any material alterations in these from what you reported on February 22?

MR. WALLS: No.

MR. WEIL: They are substantially the same?

MR. WALLS: Yes.

MR. WEIL: Additions to it, nothing to straight from the --

MR. WALLS: Correct.

MR. WEIL: We would offer Government's Four and Five at this time.

THE COURT: Any objection.

MR. JONES: No.

(Cr. Doc. 89 at 17-18.) He went on to explain that the recording of the drug transaction acquired through the use of a body wire that was admitted as Government's Exhibit 6 was edited to the relevant segment due to its length:

MR: WEIL: … Did you record that whole body wire tape on to a disk?

MR.WALLS: I did.

MR: WEIL: Approximately how long was it?

MR.WALLS: It was over three hours.

MR: WEIL: Show you what I have marked Government's Exhibit 6 and ask if you can identify that.

MR.WALLS: Yes.

MR: WEIL: What is that?

MR.WALLS: It's the recording from the body wire.

MR: WEIL: All right. Did we just clip out a portion of that body wire?

MR.WALLS: Yes

MR: WEIL: And put it on Government's Exhibit Six?

MR.WALLS: Yes.

MR: WEIL: What was the portion we clipped out?

MR.WALLS: The transaction.

MR: WEIL: The actual transaction itself?

MR.WALLS: Yes.

MR: WEIL: Between who?

MR.WALLS: Jesse Henderson, Lamar Gibson, and Sean Greer.

MR: WEIL: Your Honor, we would offer Government's Six.

THE COURT: Any objection?

MR JONES: No.

(Cr. Doc. 89 at 20-22.) Nothing in the record suggests that the recording was otherwise altered to manipulate the content, but only to trim it for efficiency and relevance. Gibson offers no evidence that the recordings were otherwise manipulated. Without evidence to support his argument, this claim fails.

## V.    Conclusion

For the foregoing reasons, Gibson's § 2255 motion to vacate, set aside, or correct a sentence is due to be denied.

Additionally, to the extent this dismissal necessitates a ruling on the certificate of appealability issue, one will not be issued by this Court. Rule 11 of the Rules Governing § 2255 Proceedings requires the court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  *See* Rule 11, Rules Governing § 2255 Proceedings.  This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484 (2000)). This Court finds that Gibson's claims do not satisfy either

standard. Accordingly, insofar as an application for a certificate of appealability is implicit in Gibson's motion, it is due to be denied.

A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on September 10, 2021.

L. Scott Coogler
United States District Judge

206728